[No. 19419. *En Banc.* November 20, 1926.]

DAVID ROSENBERG *et al., Respondents,* v. ELLA S. ROSENBERG *et al., Appellants.*[1]

[1] FRAUD (2, 22)—ELEMENTS OF FRAUD—FIDUCIARY AND CONFIDENTIAL RELATIONS—EVIDENCE—SUFFICIENCY. It is an actionable fraud against residuary legatees for an executor to effect a sale of real estate whereby, through the instrumentality of a corporation owned by him, he received a secret profit of twenty thousand dollars when a co-executor exercised an option to repurchase from the corporation at an increased price, which option was part of the deal effecting the sale.

[2] COMPROMISE AND SETTLEMENT (6)—IMPEACHMENT—FRAUD. The settlement of a suit against executors for fraud committed upon residuary legatees in making a sale of real estate is not *res judicata* or conclusive where it was procured by withholding knowledge of a secret profit of $20,000, made by one of the executors, which was not discovered by the legatees until after the compromise and dismissal of the first action, which embraced other matters.

[1]Reported in 250 Pac. 947.

[3] LIMITATION OF ACTIONS (56)—FRAUD—DISCOVERY OF FRAUD. An action against an executor for fraud in effecting a sale of real estate with a secret profit to himself is not barred by the statute of limitations if commenced within two years after discovery of the fraud.

HOLCOMB, FULLERTON and PARKER, JJ., dissent.

Appeal from a judgment of the superior court for King county, Simpson, J., entered January 10, 1925, upon findings in favor of the plaintiffs in an action for fraud, tried to the court. Affirmed.

*Frank S. Griffith* and *Jay C. Allen,* for appellants.
*Tanner & Garvin,* for respondents.

MACKINTOSH, J.—This is an action instituted by the respondents, David Rosenberg and Harry Rosenberg, against the executors of the estate of Samuel Rosenberg, deceased, to recover in damages on account of fraud, claimed to have been perpetrated upon them in a settlement had between them with respect to the property of the estate. The amount demanded was twenty thousand dollars, and for this sum the trial court, on a trial without a jury, awarded them a judgment. The executors appeal.

On October 1, 1916, Samuel Rosenberg died testate, leaving a considerable estate consisting of real and personal property situated in part in the state of Washington and in part in the state of Oregon. He left, as his heirs at law, his wife, Ella S. Rosenberg, and the respondents, who are his sons by a former marriage. Both of the respondents had reached the age of majority at the time of their father's death. In his will, the testator made specific bequests to certain of his relatives, a specific bequest to his wife, and named his sons as the residuary legatees of his estate. He nominated his wife, one Isaac Himelhoch and one Joseph Levinson as executors of the will. Himelhoch

was his brother-in-law, and in his will he calls Levinson his nephew, but the evidence seems to show that Levinson's actual relationship was that of husband of the testator's niece. The will was admitted to probate and the executors qualified.

The deceased left the estate somewhat burdened with encumbrances, the specific bequests, and the federal and state taxes. At the end of two and one-half years, it became evident to the executors that the estate could not meet the charges against it which were payable in money, and that it would be necessary to sell certain of its real property to acquire the money. The amount required approximated one hundred and twenty thousand dollars. The property in the state of Oregon consisted of acreage, on which there was an orchard. Property of this sort was not then in demand, and it was the opinion of the executors that it could not be sold, except at a sacrifice. The remaining property which it was possible to sell for the sum required consisted of certain lots in the city of Seattle on which there was a hotel. This they finally sold and conveyed to the Manhattan Investment Company for a consideration of one hundred and twenty thousand dollars. The purchaser was a family corporation owned by the Levinsons, of which Levinson, one of the executors, was president, and his wife, the daughter of another executor, was secretary. Of the money paid as the purchase price, eighty thousand dollars was paid from the funds of the corporation, and forty thousand dollars from money advanced to the corporation by the executrix, Mrs. Rosenberg. As a consideration for the advancement, Mrs. Rosenberg was granted an option to purchase the property from the corporation at any time within four years by paying to the corporation the further sum of one hundred thousand dollars, with interest at a stated rate.

Within a short time after the deed to the property from the executors to the corporation was placed of record, the residuary legatees brought an action to set the sale aside. They alleged fraud, both actual and constructive, and sought to compel the executors to account to the court as to their doings as such. Issue was taken on the allegations of the complaint, and a trial was entered upon and some testimony was taken. At this stage of the proceedings, the parties entered into an agreement of settlement. This settlement was not only of the action itself, but included the rights of the parties as they pertained to the estate. The agreement need not be referred to at length. In substance, it awarded to the plaintiffs, the residuary legatees, all of the property of the estate situated in the state of Oregon, both real and personal, and also certain real property situated in the city of Seattle, in this state. On their part, the executors agreed to pay the costs and expenses of the administration, the charges and claims against the estate of every kind and nature, and the specific bequests of the will. The agreement was subsequently carried out, the parties executing to each other the necessary conveyances and acquittances to carry it into effect.

At the time of the commencement of the above mentioned action, the plaintiffs knew that Levinson was one of the executors of the estate and knew of his connection with the Manhattan Investment Company, and, of course, had a like knowledge when they entered into and subsequently carried into effect the agreement of settlement. By this settlement, the respondents were satisfied with the consideration paid for the property, and had no further objection to the sale because of Levinson's interest in the purchase. They entertained the belief that the purchase price was paid with money belonging to the estate, and the real purpose of the

first action was to ascertain the truth or falsity of this belief. Prior to the settlement, the executors submitted their books for audit, gave the plaintiffs such information concerning the affairs of the estate as was sought from them, but did not divulge the agreement between the Manhattan Investment Company and Mrs. Rosenberg whereby the Manhattan Investment Company was to make a profit of twenty thousand dollars; and the plaintiffs, being satisfied with the showing so far as made, entered into and subsequently carried out the agreement of settlement. Mrs. Rosenberg subsequently exercised the option.

In this action, the legatees make no claim of fraud based on the fact that the executor Levinson had an interest in the corporation which became the purchaser of the property. They had knowledge of that fact prior to the time they entered into the agreement of settlement and prior to the time they carried out the agreement and accepted its benefits. They were of mature age at the time and competent to contract for themselves. Manifestly, under these circumstances, they are estopped from urging any question concerning the settlement of which they then had knowledge.

[1] They contend, however, that they were not then informed of the fact that Mrs. Rosenberg had advanced the sum of forty thousand dollars towards the purchase price of the property, and were not informed that, as a consideration therefor, she had been given an option to purchase the property at an advance of twenty thousand dollars over the price the corporation paid for it, and contend that this was such a fraud upon them as to entitle them to recover from the executors the amount of this profit. The principal argument is, as we gather it, that the actual price paid for the property was one hundred and forty thousand dollars and not one hundred and twenty thousand dol-

lars as was reported, that this sum was taken from that part of the estate which would have reverted to them as residuary legatees, and, in consequence, they have the right to recover it from the executors.

It has been so often and emphatically said that the transactions between persons in confidential relationship must be carried on with absolute purity, that it is unnecessary to make repetition here of the authorities or the reasons upon which that rule of conduct is founded. Applying that standard of fidelity and frankness, the arrangement between the executors whereby one of them, through the instrumentality of a corporation which he owned, was to receive a profit of twenty thousand dollars out of the sale of the Sorrento Hotel, amounted in law to a fraud upon the residuary legatees. Courts must insist that guardians cannot profit from the estates of their wards or executors from the estate of the heirs in such way as was here adopted. *Hemrich v. Hemrich,* 117 Wash. 124, 201 Pac. 10.

[2] The only question of importance in this case, therefore, is whether these respondents can now make question of these acts, the claim of the appellants being that the matter has become *res judicata* by reason of the settlement of the action begun in March, 1919. Recognizing that the settlement and termination of litigation is a consummation devoutly to be wished, still, at the same time, such settlements and terminations must not be tainted with fraud in procurement. It is true, of course, that all matters which were litigated or could have been litigated in one suit are not subject to subsequent litigation between the same parties. But this rule is subject to the limitation that, where the parties have been induced by fraud or other unlawful means from bringing into the original action all the matters which might have been therein litigated,

they are not then barred from introducing those matters in a subsequent lawsuit. *White v. Miley,* 137 Wash. 80, 241 Pac. 670. So, here, the settlement which was made of the action begun in March, 1919, did not become *res judicata* of this transaction between the Manhattan Investment Company and Mrs. Rosenberg. Information in regard to this transaction was withheld from the respondents in the making of that settlement. They had no intimation that one of the executors of their father's estate was in the way of procuring for himself a twenty thousand dollar profit. And it is no answer to this to say that Mrs. Rosenberg might not have exercised her option, for, as a matter of fact, she did exercise it and the profit was made. If, with knowledge of this arrangement, they had made the settlement of the original action, of course they could not now reopen that matter. But that transaction having been fraudulent in law, the failure of the executors to make it known to these heirs was a breach of the duty which was owed them, and they, having discovered this breach subsequent to the settlement, are now privileged to maintain their suit. The record shows that not until March, 1922, during the trial of a case against the executor Levinson, were the facts disclosed with regard to the Sorrento Hotel sale, showing that the Manhattan Investment Company was to re-sell the property to Mrs. Rosenberg at an advanced price; and this action was begun in August of the following year. The trial court was therefore correct in holding that the plea of *res judicata* could not be sustained.

Among other assignments of error the appellants urge that the court should have allowed them to prove knowledge on the part of respondents regarding the agreement between the Manhattan Investment Company and Mrs. Rosenberg prior to the settlement of

the first suit. An examination of the record, however, discloses no basis for this assignment of error, for the reason that there is no offer of proof, nor objection to the exclusion of any testimony, on this phase of the controversy. The portion of the statement of facts, to which the only reference in appellants' brief is made, is not susceptible to the construction which the appellants claim for it.

[3] The point is made that this action is barred by the statute of limitations. The answer to this is that this action was begun within the statutory time after the discovery of the fraud.

Other minor assignments of error are made, but an examination of them shows nothing upon which to predicate a disagreement with the findings, conclusions and judgment of the trial court.

For that reason, the judgment is affirmed.

TOLMAN, C. J., MAIN, MITCHELL, ASKREN, and BRIDGES, JJ., concur.

HOLCOMB, J. (dissenting)—It is incomprehensible to me how it can be deduced that a sale to the Manhattan Investment Company for one hundred and twenty thousand dollars was a sale to Mrs. Ella Rosenberg for one hundred and forty thousand dollars. After much advertising and many efforts to sell the property for as much as one hundred and twenty thousand dollars, no offers could be received for more than one hundred thousand dollars, and the property was finally sold to the Manhattan Investment Company, a corporation consisting of Joseph Levinson and his wife, for one hundred and twenty thousand dollars, on February 27, 1919. It is true, that corporation then gave an option to Mrs. Rosenberg for the sale of the property to her within four years for one hundred and forty thousand dollars. This was done because

she had advanced forty thousand dollars of the purchase money of the Sorrento Hotel property and desired to protect her interest. She did, at the end of about five years and five months, exercise her option, by paying the balance .of the purchase price, and received title to the property. But when she exercised her option to purchase the property after the expiration of the four years granted her, she *paid,* she did not *receive.* The additional twenty thousand dollars, which is said to have been received by the executors, was paid by her to the Manhattan Investment Company. As has been said in the majority opinion, these legatees make no claim of fraud based on the fact that the executor, Levinson, had an interest in the corporation which became the purchaser of the property, nor could they well do so.

I am as urgent for the maintenance of the rule of conduct on the part of persons occupying highly fiduciary positions as anyone, and desire that it be sustained in its pristine purity. It is beyond me, however, to understand how that standard of fidelity can apply when twenty thousand dollars has been paid by a purchaser having only an option, to a known vendor, even though the property increased in value during the years that her option existed, so as to constitute a fraud on the residuary legatees. This is not a case like that of *Hemrich v. Hemrich,* 117 Wash. 124, 201 Pac. 10.

If the sale to the Manhattan Investment Company is construed as a sale to Ella Rosenberg as of February 27, 1919, she did a number of useless and unprofitable things. Under the option which she took from the Manhattan Investment Company, that company continued to collect the increasing rents for over five years. Undoubtedly, she could have bought and had the title transferred to her directly in February, 1919,

with the acquiescence of all concerned, for one hundred and twenty thousand dollars, and no circumlocution would have been necessary.

Moreover, these respondents, the residuary legatees, were of full age, and in all respects *sui juris* at all times during the litigation referred to in the majority opinion, and were represented by two of the most eminent firms in the practice of law in the state of Washington in former litigation these same respondents instituted. They brought into that litigation the same deal between Mrs. Rosenberg and the Manhattan Investment Company, and prayed disclosure as to the exact status of affairs at that time, March, 1919. They and their attorneys, after examining the books of the executors and into the acts and conduct of the executors, then entered into an agreement, voluntarily and knowingly, authorizing the settlement of the estate upon the basis of the sale of the Sorrento Hotel property to the Manhattan Company, for one hundred and twenty thousand dollars. It seems to me, if anything could constitute *res judicata,* that former proceeding and the settlement thereof did so.

My opinion is that the judgment should be reversed. I therefore dissent.

FULLERTON and PARKER, JJ., concur with HOLCOMB, J.