[No. 11802.   Department Two.   August 13, 1914.]

## MATTIE KROHN et al., Appellants, v. LOTTA HIRSCH, Respondent.[1]

EXECUTORS AND ADMINISTRATORS — FINAL DISTRIBUTION — PERSONS CONCLUDED. A final decree of distribution, made upon due notice and unappealed from, decreeing the property to be community property of deceased and his widow and distributing the same to her as sole heir is final and conclusive, and cannot be attacked more than a year thereafter by one claiming an interest as sister and heir of deceased and that the property was his separate property.

CONSTITUTIONAL LAW — DUE PROCESS — CONSTRUCTIVE NOTICE IN PROBATE. The mode of giving notice in probate as provided by statute, although by publication and posting, preliminary to the rendering of orders and decrees, amounts to due process of law, making orders and decrees rendered in pursuance thereof as binding on interested parties as if brought into court by personal notice.

EXECUTORS AND ADMINISTRATORS — FINAL DISTRIBUTION — CONCLUSIVENESS—FRAUD—EXTRINSIC OR COLLATERAL—EVIDENCE — SUFFICIENCY. A final decree of distribution, made upon due notice and unappealed from, decreeing the property to be community property of deceased and his widow and distributing the same to her as sole heir, is final and conclusive on all the world, and will not be set aside at the suit of a claimant more than a year thereafter for alleged fraud in procuring the decree, praying that the property be declared held by defendant as involuntary trustee to the extent of claimant's interest therein, where it appears that claimant, an alleged sister and heir of deceased, had never been a resident of this state, and had no communication with, nor knew the whereabouts of, deceased for a period of seventeen years, but had communication with defendant prior to distribution of the estate, claiming to be a sister and heir of deceased, which defendant denied, that claimant, while having no actual notice of the administration of the estate until sometime after final settlement, had constructive notice thereof given strictly as prescribed by statute, that claimant was not prevented from appearing at the distribution hearing and protecting her alleged rights, nor induced to believe that they would be protected in her absence, but, on the contrary, defendant's acts and communications with claimant were at all times consistent with the course pursued by her in claiming the whole estate during ad-

[1]Reported in 142 Pac. 647.

ministration thereof, and she at all times dealt at arm's length
in opposing the alleged rights of claimant; since defendant's fraud,
if any, was involved in the question of defendant's right to take all
the property of deceased as his wife and sole heir, and was not ex-
trinsic and collateral to the merits of the matter before the court,
but inhered therein and was concluded by the decree.

TRUSTS—CONSTRUCTIVE TRUSTS—FRAUD IN ACQUISITION OF PROPER-
TY—PROBATE PROCEEDINGS. Where property was awarded to defend-
ant as widow and sole heir of deceased, by a decree of distribution
rendered upon due notice, conclusive and binding upon all parties,
it cannot be claimed, more than one year thereafter, that defendant
holds the property as involuntary trustee to the extent of an in-
terest claimed by one alleged to be a sister and heir of deceased,
on the ground of fraud perpetrated by defendant in procuring the
decree; since the issue to be determined was defendant's right to
take all of the property of deceased as his wife and sole heir, and
is concluded by the judgment, in the absence of fraud extrinsic of
the merits of the controversy.

Appeal from a judgment of the superior court for King
county, Smith, J., entered November 1, 1913, dismissing an
action to quiet title and for partition, after a trial on the
merits. Affirmed.

*Geo. W. Korte, Edgar J. Wright,* and *R. W. Huntoon,*
for appellants.

*Clise & Poe,* for respondent.

PARKER, J.—The plaintiffs seek recovery from the defend-
ant of their claimed interest in certain real property, situated
in the city of Seattle, and also seek partition of the property
between themselves and the defendant. The defendant holds
the property under a decree of distribution rendered by the
superior court for King county in the administration of the
estate of James McCarthy, deceased, wherein the whole of the
property was awarded to respondent as the widow of James
McCarthy. The plaintiff Mattie Krohn claims an interest in
the property as the sister and heir of James McCarthy upon
the ground that it was his separate property, and seeks to

avoid the decree of distribution because of alleged fraud on the part of the defendant in procuring it. The other plaintiffs claim an interest in the property as grantees of the plaintiff Mattie Krohn. A trial before the court resulted in judgment in favor of the defendant, denying the relief prayed for by the plaintiffs, and quieting the defendant's title to the whole of the property as against the claims of the plaintiffs. From this disposition of the cause, the plaintiffs have appealed.

The controlling facts are not in controversy here, and may be summarized as follows: On August 24, 1910, James Mc-Carthy, being then a resident of the city of Seattle, died in Alaska, while temporarily absent from home. He left surviving him his wife, this respondent, who has since married again. He left real property of considerable value, situated in the city of Seattle, being the property here in controversy. On September 16, 1910, respondent filed, in the superior court for King county, her petition for letters of administration upon the estate of James McCarthy, alleging, among other things, "that to the best of petitioner's knowledge and belief, said decedent left no heirs save only this petitioner." Due notice being given of hearing upon this petition, as the law directs, respondent was, by the court, duly appointed and thereafter qualified as administratrix of the estate, and proceeded with its administration. On October 2, 1911, the estate being fully administered, and ready for distribution of the remaining property, respondent filed her petition for distribution, alleging, among other things:

"That the said James McCarthy, deceased, was at the time of his death married to your petitioner, and the said marriage was without issue, and said deceased died without issue.

"That the said James McCarthy died intestate in the District of Alaska on the 24th day of August, 1910, and that at the time of his death he was a resident of the city of Seattle in said King county, being temporarily absent therefrom, leaving him surviving your petitioner, his widow, as his sole

heir at law, all of the estate of said deceased being community property;"

and praying:

"That after due notice given, the estate remaining in the hands of your petitioner as aforesaid may be distributed to her as the widow and sole heir of said deceased."

Thereafter, on November 9, 1911, the matter of distribution came on regularly before the court upon order to show cause and the publication and posting thereof, had strictly in compliance with the statute, and a decree of distribution was duly rendered by the court, decreeing the whole of the property to be community property of deceased and respondent, and distributing the same to respondent as his widow and sole heir. This decree has never been appealed from, and remains in full force and effect. On February 13, 1913, over one year after the rendering of this decree of distribution, this action was commenced by appellants in the superior court for King county, praying that the decree of distribution be set aside and declared void as to appellant Mattie Krohn, and that she be awarded an interest in the property as an heir of James McCarthy, deceased, resting such claim upon the theory that she is a sister of James McCarthy, and that the property was his separate property. Thereafter, by leave of the trial court, the prayer of the plaintiffs' complaint was amended by asking that respondent be declared an involuntary trustee of such interest in the property as is claimed by the plaintiff Mattie Krohn, as heir of James McCarthy, deceased, and that partition of the property be decreed accordingly between appellants and respondent.

Appellant Mattie Krohn has never been a resident of the state of Washington, but is now a resident of South Dakota, and has resided in that state for some thirty years past. In the fall of 1910, while the estate of James McCarthy was in course of administration in the superior court for King county, and nearly a year before the decree of distribution therein

awarding the property to respondent, appellant Mattie Krohn had some correspondence with respondent in which she claimed to be a sister of James McCarthy, and in which respondent denied that she, Mattie Krohn, was a sister of respondent. Appellant Mattie Krohn learned of the death of James Mc-Carthy within a short time, probably about two months, after his death occurred. Appellant Mattie Krohn did not have actual knowledge of the administration of the estate of James McCarthy in the superior court for King county until some time after the final settlement of the estate, and the rendering of the decree of distribution therein, though she had constructive notice thereof given strictly as our statute prescribes. We think the evidence before us warrants the conclusion that respondent, at all times up until the trial of this case, acted in good faith in denying the claim made by appellant Mattie Krohn that she was a sister of James McCarthy, and that respondent also acted in good faith in claiming to be the sole heir of her husband James McCarthy. According to Mattie Krohn's own testimony, she had had no communication with James McCarthy, whom she claimed to be her brother, and had known nothing of his whereabouts, for a period of seventeen years prior to his death.

It has become the settled law of this state that orders and decrees of distribution made by superior courts in administering estates, when made upon due notice, as provided by our statutes, are final adjudications, conclusive, and binding upon all the world. Such adjudications, as has been said, have all the force and effect of judgments *in rem*. In *In re Ostlund's Estate*, 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990, we said, touching the effect of a decree of distribution: "Its very object and purpose is to judicially determine who takes the property left by the deceased." Commenting upon these observations, in *Alaska Banking & Safe Deposit Co. v. Noyes*, 64 Wash. 672, 117 Pac. 492, we said:

"It was the purpose of the court in that case to forever set at rest the opinion, prevailing to some extent, that a probate

proceeding was something of less importance than an ordinary civil action, and that a decree formally entered could be questioned by any one although a party, where, as in that as well as in this case, it was thereafter believed to have been entered upon a mistake of fact or an erroneous conception of the law."

See, also, *In re Doane's Estate*, 64 Wash. 303, 116 Pac. 847; *McDowell v. Beckham*, 72 Wash. 224, 130 Pac. 350; *In re Hoscheid's Estate*, 78 Wash. 309, 139 Pac. 61. These decisions also render it plain that this court holds that the statutory manner of giving notice preliminary to the rendering of orders and decrees in probate, although such notice is only constructive, that is, by publication and posting, amounts to due process of law, so that orders and decrees rendered in pursuance thereof are as binding upon all interested parties, so far as the subject-matter before the court is concerned, as if such parties were brought into court by personal notice. So thoroughly has this become the settled law of this state that further review and citation of authorities seems at this time unnecessary. We quote, however, as an expression of the reason and necessity of the rule, the language of Justice Bradley, speaking for the supreme court of the United States in *Case of Broderick's Will*, 88 U. S. 503, as follows:

"The constitution of a succession to a deceased person's estate partakes, in some degree, of the nature of a proceeding *in rem*, in which all persons in the world who have any interest are deemed parties, and are concluded as upon *res judicata* by the decision of the court having jurisdiction. The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership; and, consequently, that there should be some convenient jurisdiction and mode of proceeding by which this devolution may be effected with least chance of injustice and fraud; and that the result attained should be firm and perpetual."

Counsel for appellants apparently concede this to be the law, but seek to avoid the effect of this decree of distribution by attributing to respondent fraud in procuring its rendition. It seems quite clear to us that respondent did nothing to the prejudice of appellant Mattie Krohn's rights as an heir of James McCarthy if, in fact, she was such; unless it be held that respondent presented to the superior court, upon the distribution hearing, evidence which was not true touching the question of the nature of the property left by James McCarthy, and the question of who was entitled to take the same as heir and distributee. These questions, however, go to the merits of the very matter there in issue and to be decided by the court, and as to which appellant Mattie Krohn was given every opportunity to be heard which the law of this state accorded her. Respondent, so far as this record shows, did absolutely nothing tending to prevent appellant Mattie Krohn from appearing at that hearing, and presenting evidence touching her claimed rights. Neither did respondent do or say anything inducing appellant Mattie Krohn to believe that her rights, as she claimed them, would be protected if she did not appear and make her claim at that hearing. Indeed, respondent's acts and communications to appellant Mattie Krohn were consistent with, and would even suggest, the very course that she pursued in making claim to all of the property of her deceased husband, in the administration of the estate. Respondent asserted her right to this property, in effect, when she filed her petition for letters of administration. She again asserted it in her petition for distribution, and even in her communications with appellant Mattie Krohn, she denied that Mattie Krohn was a sister of her deceased husband. She was, in fact, at all times, dealing at arm's length and in open antagonism to the claims of Mattie Krohn. In *Greene v. Greene*, 2 Gray 361, 61 Am. Dec. 454, Chief Justice Shaw said:

"The maxim that fraud vitiates every proceeding, must be taken, like other general maxims, to apply to cases where

proof of fraud is admissible. But where the same matter has been either actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be controverted."

In *United States v. Throckmorton*, 98 U. S. 61, Justice Miller, speaking for the court, refers to the decision of Chief Justice Shaw in the *Greene* case as being "perhaps the best discussion of the whole subject to be found," and adds this pertinent observation:

"The acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered. . . . The mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

In *Fealey v. Fealey*, 104 Cal. 354, 38 Pac. 49, 43 Am. St. 111, Justice De Haven, speaking for the court, said:

"In *Pico v. Cohn*, 91 Cal. 129, 25 Am. St. 159, the question was very carefully considered, and this court announced the same rule, saying: 'The reason of this rule is that there must be an end to litigation; and when the parties have once submitted a matter, or have had an opportunity of submitting it, for investigation and determination, and when they have exhausted every means of reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy . . . Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is that a final judgment cannot be annulled merely because it

can be shown to have been based on perjured testimony; for, if this could be done once, it could be done again and again, *ad infinitum.*' These cases are, we think, conclusive of the one now before us. So far as concerns the question here presented, there is no difference in principle in the nature of the judgments under review in the above-cited cases and the order here sought to be annulled. The order setting apart the homestead to defendant (no homestead having been declared during the lifetime of the deceased) operated to vest in the defendant a title to the land so set apart (*Estate of Boland,* 43 Cal. 640; *Estate of Moore,* 96 Cal. 522); and such order was in the nature of a judgment *in rem* (*Kearney v. Kearney,* 72 Cal. 591); and, the court having jurisdiction to pronounce it, it is conclusive upon plaintiff and all persons interested in the estate, and can only be successfully attacked in equity upon the same grounds upon which a judgment *in personam* may be annulled."

While these views find some dissent in the earlier decisions, we think there are few, if any, decisions rendered in recent years in conflict therewith. 23 Cyc. 1024. *Friedman v. Manley,* 21 Wash. 675, 59 Pac. 490.

It often becomes a matter of some difficulty, in a given case, to determine when the alleged fraud is extrinsic and collateral to the merits of the matter before the court for determination. In support of their contention that respondent committed fraud in the procuring of this decree of distribution, extrinsic of the merits of the question then before the court, counsel for appellants rely principally upon the decisions of the California court in certain cases, which, we think, can be differentiated from the case before us.

In *Sohler v. Sohler,* 135 Cal. 323, 67 Pac. 282, 87 Am. St. 98, it was sought to set aside a decree of distribution upon the ground of fraud on the part of the distributee in procuring the same. In that case, the fraud was held to be extrinsic and such as would avoid the decree. A critical reading of that decision will show, however, that the distributee, the executrix and mother of minor children, procured the decree in her favor as against such minor children, without

their being heard or represented in court upon the hearing
other than by herself as their natural guardian. Manifestly
they were not afforded that opportunity to be heard which the
law accords to minors. The mother was not dealing at arm's
length with the minors in obtaining the decree adverse to
their interest, but was there as their representative as well as
her own representative.

In *Aldrich v. Barton*, 138 Cal. 220, 71 Pac. 169, 94 Am.
St. 43, there was involved an accounting of trustees and an
approval of their account by the superior court. Apparent-
ly the proceeding was not one strictly in probate, since it
involved an accounting by the trustees as such after distribu-
tion of the estate, the trustees holding the property by virtue
of the distribution to them as such. They rendered an ac-
count to the court upon a mere posting of ten days' notice
during the absence of their *cestui que trust* from the state,
without the knowledge of their *cestui que trust*, and noth-
ing appearing upon the face of the account to indicate the
fraud which they were there perpetrating upon their *cestui
que trust*. We think this is not analogous to a case like
the one before us, wherein there was rendered a solemn judg-
ment upon due process of law, touching a matter, to wit, heir-
ship and distribution, which was put directly in issue by the
allegations of the petition of the respondent.

In *Silva v. Santos*, 138 Cal. 536, 71 Pac. 703, there was
involved a settlement of the account of a guardian of an in-
sane person rendered and approved by the court a few days
following the restoration of the insane person to his reason.
The guardian apparently omitted from his account, and failed
to account for, property which was wholly unknown to his
ward at that time. The order settling the account was not
a final adjudication as to an accounting of property con-
cealed and not brought to the court's notice in the guardian's
account. Here, again, we have a case where the person pro-
curing the adjudication was not dealing at arm's length
with his ward. He was concealing facts which were peculiar-

ly within his knowledge and without the knowledge of his ward.

In *Campbell-Kawannanakoa v. Campbell,* 152 Cal. 201, 92 Pac. 184, we have another situation where the disposition of the cause was apparently largely influenced by the fact that the sale and disposition of the property in the probate proceeding was brought about by a connivance of the natural guardian of minor children with others, which was held to be a fraud upon their rights of such extrinsic nature as to render the orders of the court not binding upon the children when their rights were sought to be protected in a subsequent suit in equity.

In *In re Walker's Estate,* 160 Cal. 547, 117 Pac. 510, 36 L. R. A. (N. S.) 89, deceased died, supposedly intestate, his estate was administered and in due course distributed by the usual decree, the distributees thereunder receiving the property. Some eight months after the rendering of the decree of distribution, a will of the deceased was filed with a petition for its probate. The distributees under the prior decree contested the probate of the will upon the ground that the decree of distribution under which they held was a conclusive adjudication of the title to the property of the estate in them, and that, therefore, the will was not entitled to be admitted to probate. The majority opinion in that case holds that it was proper for the probate court to receive proof of and establish the will, to the end that those entitled to take under it might be in a position to prosecute their rights in equity, the court declining, in substance, to decide what the rights of those named in the will as devisees would be as against the distributees under the prior decree of distribution. There are remarks made in the decision which might seem to indicate that the rights of the devisees under the will would be held superior to those of the distributees under the prior decree of distribution, but we do not think it was there so decided.

The theory of counsel for appellant, in its final analysis, seems to be not that this decree of distribution awarding the property to respondent is void as such, but that, because of what counsel conceives to be fraud perpetrated by respondent in the procuring of the decree, she took the property thereby awarded to her as an involuntary trustee for appellant Mattie Krohn to whatever extent Mattie Krohn would have inherited from James McCarthy as his sister and heir. We are quite unable to agree with this contention. The very question to be determined, and which was in issue before the court, not only by virtue of the law, but by virtue of respondent's allegations in her petition for distribution, was her right to take all of the property left by James McCarthy as his wife and sole heir, as against all the world, including appellant Mattie Krohn, who had notice of that hearing strictly in the manner required by statute—constructive notice, it is true, but nevertheless, notice such as has been held sufficient as due process of law to support a decree of distribution. To say that respondent now holds any part of this property in trust for Mattie Krohn is nothing more nor less than saying that the question of who was entitled to take the property left by James McCarthy was not correctly determined upon the merits by the superior court upon the distribution hearing, and that appellant Mattie Krohn should now be awarded a new trial upon that question more than one year after it has been solemnly adjudged against her and all the world, upon due notice. As between respondent and appellant Mattie Krohn, that was an adverse proceeding. To us, it is inconceivable that a party can be considered as holding in trust for his adversary property which has been awarded to him as against his adversary by a judgment rendered upon due notice in a proceeding instituted and carried on for the very purpose of determining the claims of each as against the other, to the property involved, in the absence of fraud, or some fact extrinsic of the merits of the controversy in issue, such as would avoid such judgment.

We are of the opinion that such is not the law, and that there has not been any fraud shown to have been committed by respondent as against the rights of appellant Mattie Krohn, extrinsic of the merits of the questions involved in and disposed of by the decree of distribution.

The judgment is affirmed.

CROW, C. J., MAIN, MOUNT, and FULLERTON, JJ., concur.