[No. 28800. Department Two. December 31, 1942.]

*In the Matter of the Estate of* AUGUSTA CHRISTIANSON, *Deceased.*

ERICK CHRISTIANSON, *Appellant,* v. LILLIAN KERLEY *et al., Respondents.*[1]

[1]Reported in 132 P. (2d) 368.

*C. A. Lee,* for appellant.

*Walter F. Fisher, Loomis Baldrey, Thomas & Keplinger,* and *Robert B. Sherwood,* for respondents.

BLAKE, J.—On June 18, 1941, after due notice, a decree of distribution was entered in the above-entitled estate. February 26, 1942, Erick Christianson, a nephew of deceased, filed a motion, supported by his affidavit, to vacate the decree. The motion was grounded upon subdivisions 4 and 7 of Rem. Rev. Stat., § 464 [P. C. § 8130], the former providing for the vacation of judgments for fraud practiced by the successful party; the latter, for "casualty or misfortune preventing [a] party from prosecuting or defending; . . ." A show cause order was issued, directed to interested parties, who appeared and interposed demurrers to the motion, the supporting affidavit, and the show cause order. The court sustained the demurrers, and entered an order dismissing the proceedings. From this order, the moving party appeals.

In substance, the affidavit in support of the motion to vacate the decree of distribution was based upon two alleged facts: (1) That the entire estate was distributed to two surviving sisters of the decedent to the exclusion of nieces and nephews, the children of a deceased brother and sister; and (2) that there was

property belonging to the estate which had not been brought into the administration.

*First.* It is conceded that the decree of distribution was entered upon due notice. There are no allegations of extraneous fraud contained in the affidavit; that is, no representations were made to any of the nieces or nephews which led them to believe it was unnecessary for them to appear and protect their rights, or that they would participate in the estate under the decree of distribution.

The contention of appellant simply is that a fraud was practiced upon the court; that the decree entered is not the decree the court would have entered had it been advised of the existence of the children of decedent's deceased brother and sister. This contention, upon basically indistinguishable facts and circumstances, has been met and rejected by this court in many cases. *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990; *In re Doane's Estate,* 64 Wash. 303, 116 Pac. 847; *McDowell v. Beckham,* 72 Wash. 224, 130 Pac. 350; *Krohn v. Hirsch,* 81 Wash. 222, 142 Pac. 647; *Meeker v. Waddle,* 83 Wash. 628, 145 Pac. 967; *Davis v. Seavey,* 95 Wash. 57, 163 Pac. 35, Ann. Cas. 1918D, 314; *Coleman v. Crawford,* 140 Wash. 117, 248 Pac. 386; *O'Leary v. Bennett,* 190 Wash. 115, 66 P. (2d) 875.

These decisions hold, in substance, that a decree of distribution entered upon due notice is, in the absence of extrinsic fraud, *res judicata* as to the rights of persons interested to participate in the estate. *Farley v. Davis,* 10 Wn. (2d) 62, 116 P. (2d) 263. In the leading case, *In re Ostlund's Estate, supra,* a decree of distribution was entered awarding all the property of the deceased to her husband under the terms of a will which failed to mention the testatrix's children. Hold-

ing the decree of distribution conclusive, the court said, p. 364:

"The contention that the court, in rendering the decree, erroneously determined who was entitled to the property as distributee upon distribution of the estate of Elsie Ostlund, goes only to the merits of the question then before the court, and is wholly foreign to the question of the jurisdiction of the court to determine who was entitled to the property then being distributed.

"It is true the decree does not create the title in the distributees, but it is a solemn adjudication of who acquired the title of the deceased, and if rendered upon due process of law is final and conclusive upon that question. Its very object and purpose is to judicially determine who takes the property left by the deceased."

What was said in *Krohn v. Hirsch, supra,* p. 228, is peculiarly pertinent to the situation presented here:

"It seems quite clear to us that respondent did nothing to the prejudice of appellant Mattie Krohn's rights as an heir of James McCarthy if, in fact, she was such; unless it be held that respondent presented to the superior court, upon the distribution hearing, evidence which was not true touching the question of the nature of the property left by James McCarthy, and the question of who was entitled to take the same as heir and distributee. These questions, however, go to the merits of the very matter there in issue and to be decided by the court, and as to which appellant Mattie Krohn was given every opportunity to be heard which the law of this state accorded her. Respondent, so far as this record shows, did absolutely nothing tending to prevent appellant Mattie Krohn from appearing at that hearing, and presenting evidence touching her claimed rights. Neither did respondent do or say anything inducing appellant Mattie Krohn to believe that her rights, as she claimed them, would be protected if she did not appear and make her claim at that hearing."

Appellant puts much reliance in the cases of *Litzell*

*v. Hart,* 96 Wash. 471, 165 Pac. 393; *In re Johnston's Estate,* 107 Wash. 25, 181 Pac. 209; *State ex rel. Pemberton v. United Pac. Cas. Ins. Co.,* 188 Wash. 304, 62 P. (2d) 729. The first and the last cases, we think, are readily distinguishable. The *Litzell* case was an action to reform and amend a decree to conform to the decision actually rendered by the court. The decision turned on the principle that a court has inherent power to modify its judgment to conform to the actual decision, and may do so at the instance of anyone injuriously affected.

Candor impels us to admit that we see little distinction in principle between the *Johnston* case and this. There, the court set aside the order approving the final account and the decree of distribution for "irregularities." We gather from the opinion, however, that the irregularities were in the administration of the estate rather than in obtaining the decree. In any event, the court seemingly makes a distinction between the situation which then confronted it and that which it faced in the case of *In re Doane's Estate, supra,* where, in refusing to vacate a decree allowing executor's fees and settling and approving his final account, it said, p. 307:

"A decree settling a final account of an executor or an administrator when rendered upon due statutory notice, as this decree was so rendered, has all of the force, effect and finality of any other final judgment rendered by a superior court. This is not only evident from the very nature of the statutory notice and procedure provided for and leading up to the rendition of such a decree, but seemingly for the purpose of removing all doubt upon the question and putting probate decrees of this nature upon the same firm basis as to their finality as all other final judgments are."

In the *Pemberton* case, it was simply held that, as to the state, payment of inheritance taxes is a condition

precedent to distribution; and that a decree of distribution did not bar the state from maintaining an action on the administrator's bond for inheritance taxes due and unpaid.

We conclude that, under the decisions we have cited, the alleged fraud of respondents in not disclosing to the court the existence of nieces and nephews of decedent, entitled to share in her estate, does not constitute ground for vacating the decree of distribution.

*Second.* An estate, of course, may be reopened for administration upon property discovered subsequent to its closing. But the discovery of property which has not been brought into the administration affords no ground for vacating the decree of distribution. *In re Dyer's Estate,* 161 Wash. 498, 297 Pac. 196; *In re McGovern's Estate,* 187 Wash. 168, 60 P. (2d) 96.

Order affirmed.

ROBINSON, C. J., BEALS, and SIMPSON, JJ., concur.