[No. 32812.  Department Two.  January 6, 1955.]

*In the Matter of the Estate of S. WARD PHILLIPS, Deceased.*
*In the Matter of the Partnership Estate of S. WARD PHILLIPS,*
*Deceased.*

BETTY LOUISE THURBER *et al., Respondents,* v. R. H. PHILLIPS,
*Individually and as Administrator, et al., Appellants.*[1]

[1]Reported in 278 P. (2d) 627.

*Cross & Whitmore, Hamblen, Gilbert & Brooke,* and *Harry M. Cross,* for appellants.

*Chadwick, Chadwick & Mills,* for respondents.

HILL, J.—S. Ward Phillips died intestate July 26, 1929. He was survived by his widow, Verona Phillips, and four minor children. At the time of his death, deceased and his brother, R. H. Phillips, were engaged in extensive farming operations on wheat lands in Adams county, both individually and in partnership with each other. The estate

of the deceased consisted principally of real estate holdings (fee ownership, interest as contract purchasers, and leases), and personal property used in connection with his farming operations, together with his one-half interest in similar assets owned by the partnership. Much of the land farmed by him and the partnership was marginal wheat land being purchased on contract, and at the time of his death the amounts still to be paid on many of the contracts exceeded the then-value of the lands.

R. H. Phillips was appointed administrator of both the individual and the partnership estates August 1, 1929, and served in that capacity during the entire administration of the estates. His final accounts were approved and the decree of distribution entered in each estate on February 9, 1938.

On July 3, 1936, Verona Phillips was appointed guardian of the person and estates of the minor children, all of whom became of age between February 21, 1945, and October 19, 1949.

In 1949, during an investigation in connection with another matter, Verona Phillips obtained from the Federal department of internal revenue the records of an audit that office had made in 1939 of the estates of her deceased husband. This audit disclosed sales made by the individual estate to the Seattle Grain Company during the years 1929 and 1930 in excess, by $8,208.08, of those reported by R. H. Phillips in his administrator's accounts. This discovery was primarily responsible for the litigation with which we are now concerned.

The present litigation is tripartite. There are two petitions by Frances Marie Phillips, a minor heir, commenced within one year after she attained her majority, seeking to vacate the decrees of distribution in the individual and partnership estates of her father, S. Ward Phillips, and seeking an accounting from R. H. Phillips, as administrator of both estates, upon the grounds of error and irregularities in the judgments and for fraudulent concealment of estate assets. There is also a suit in equity (hereinafter referred to as the equity case), brought by Verona Phillips and the three older children of S. Ward Phillips, in which they seek

the vacation of the decrees of distribution in the individual and partnership estates and, ask for an accounting from the administrator in both estates. The grounds in the latter action are duress and fraudulent inducement by the administrator in that he concealed estate assets and thereby induced the entry of agreements for the settlement of the estates, and failure by the administrator to submit the settlement agreements to the court for approval in the guardianship proceeding, in accordance with RCW 11.92.060 [cf. Rem. Rev. Stat., § 1576]. These three proceedings were consolidated for the purpose of trial and for this appeal.

The trial court entered decrees granting the requested relief to the petitioners and plaintiffs in the consolidated actions, impressing a constructive trust on all properties in the hands of R. H. Phillips as administrator of the individual and partnership estates, and directing him to render accounts as to all the properties of said estates in his hands, as administrator on December 9, 1937, and as to all profits and income thereon to the date of such accounts.

We shall first discuss the rights of Verona Phillips individually, as established by the evidence in the equity case.

The probate proceedings in both the individual and partnership estates are replete with irregularities (to use a euphemistic phrase). These have to do with things done and things left undone. No inventories and appraisements were filed until five years after the administration of the estates began, and when they were filed numerous items of real and personal property in which the estates had an interest in 1929 were omitted. The administrator turned back to the vendors real property being purchased on contract, made and abandoned leases, sold personal property for cash and for notes (many of the sales being to his father and other relatives), and generally did what seemed wise to him, without, in most instances, submitting the matters to the probate court for authorization or approval. He paid debts of the estates for which no claims had been filed and made payments on certain indebtednesses in excess of the amounts for which claims were filed. (The amounts of the claims in such cases were the amounts of the indebtedness

less the unauthorized payments made by the administrator, and there is no contention that the estates did not owe the amounts paid.)

Particularly in view of the fact that the administrator, R. H. Phillips, and members of his family ultimately acquired for themselves a substantial portion of the lands which he, as administrator, "turned back" to the contract vendors, a very dark picture can be and is painted as to his derelictions in the performance of his trust. However, there is another picture, painted against a background of depression, of abandoned farms, of a struggle by wheat farmers to keep their heads above water, and of families living on fifty dollars a month, and in that picture the administrator appears as one in whom creditors had confidence and with whom they were willing to take a chance, and one who was, consequently, able to keep the estates afloat in financial seas that might well have engulfed them, and who jettisoned only such properties as were at the time not worth the amounts still due on them and which could not then be operated profitably. It is urged that, while the administrator did not operate the farms from the courtroom of the probate judge, he at all times used his best judgment and acted in what he conceived to be for the best interests of all concerned.

It is not necessary for us to determine which of these pictures (if either of them) is entirely accurate. Even taken at the worst, the details of the picture were, with one exception, known to Verona Phillips, and that one was suspected by her in December, 1937, when the settlement agreements between R. H. Phillips, individually and as administrator of both estates, and Verona Phillips, individually and as guardian of the estates of the minor children, were executed, and in 1938, when the estates were closed. The important and to us decisive circumstance in this case, so far as Verona Phillips is concerned, is pinpointed in the trial court's finding:

"LXIX. That applicable to Verona Phillips, plaintiff [respondent] in the equity case, with the exception of the total specific sales to Seattle Grain Co. in the individual

estate concealed and not known to her in the amount of $8,208.07, all matters now raised in the equity case by Verona Phillips were either known to her prior to the date of the settlement agreements and of the distribution of the estates, or were matters of record, or could with the exercise of reasonable diligence have been then ascertained and are barred as a ground for vacating the decrees or the settlement agreements."

The trial court bases its judgment in favor of Verona Phillips on this finding of concealed grain sales in the amount of $8,208.07. The factual background relating to the settlement agreements and the grain sales referred to is as follows:

In 1936, Verona Phillips, having become suspicious of the manner in which the estates were being administered, employed an attorney and an accountant to investigate the actions and accounts of the administrator in both estates. As a result of these investigations, Verona Phillips, in her individual capacity and as guardian of her minor children, filed in both the individual and partnership estates petitions for an accounting and for the removal of R. H. Phillips as administrator, alleging irregularities and the mishandling of the affairs of the estates. The petition in the individual estate, filed February 13, 1937, alleged, as one of many grounds for such removal and accounting:

"That said administrator produced wheat for the season of 1929, 1930, 1931, 1932, 1933 and 1934 aggregating in value $39,034.30 more than he reported to the Court; that he has at all times since failed and neglected to account therefor and will continue to withold such report unless required by the Court to render an accounting.

". . . petitioner believes upon such an accounting being made, the above mentioned shortage will be increased."

The petition in the partnership estate, filed the same date, alleged that in the years 1929 to 1934, inclusive, the administrator produced wheat "aggregating in value $43,155.30, more than he reported to the Court" on partnership lands.

A citation in each state was issued by the court to R. H. Phillips to show cause why the prayer of the petitions for his removal as administrator and for an accounting should

not be granted; whereupon R. H. Phillips filed answers admitting in part and denying in part the allegations of the petitions, including a denial of the allegation that grain was produced which was not accounted for. Subsequently, on October 25, 1937, Verona Phillips filed amended petitions in both estates containing the same and additional charges against the administrator.

Following negotiations between the attorneys of the respective parties, a settlement agreement was executed December 9, 1937, and supplemented December 30, 1937, between Verona Phillips, "individually and as guardian for her four minor children," and R. H. Phillips, individually and as administrator of both estates. In substance, this agreement provided: (a) for the distribution to Verona Phillips, individually and as guardian of her four minor children, of 4155.92 acres of land (inventoried in the individual estate) free and clear of encumbrances, together with all interest of the individual estate in additional real estate not here material, and together with cash in the amount of twenty thousand dollars, which, after deductions, was to be "participated in by and between" Verona Phillips individually and as guardian; (b) for the distribution to R. H. Phillips of 4464.99 acres (inventoried in the partnership estate), together with all personal property, cash and grain in both estates; (c) that R. H. Phillips was to pay all indebtednesses and all claims against both estates except three thousand dollars and interest thereon advanced to the estates by Verona Phillips and a claim filed on behalf of the estate of Anna Mittermeyer, deceased (the mother of Verona Phillips), which Verona Phillips was to satisfy.

It was stated in the agreement dated December 9, 1937, that

". . . it is expressly understood and agreed that this agreement settles and compromises all claims which first party [Verona Phillips, individually and as guardian of her four minor children] has against second party [R. H. Phillips, individually and as administrator of both estates], his father and brothers . . .";

and in the supplemental agreement, dated December 30, 1937, it was stated that it was the intention

". . . that all matters and controversies arising out of the administration of . . . [both] estates and transactions in connection therewith be hereby fully and finally settled and adjusted. . . ."

Both the original agreement and the supplement stated that the total agreement was subject to the approval of the superior court for Adams county, Washington.

On February 9, 1938, a hearing was had on the final accounts and petitions for distribution in both estates before the late Judge Matt L. Driscoll, then the only superior court judge for Franklin, Benton, and Adams counties. The "Order Approving Final Account and Decreeing Distribution" in both estates recited that Verona Phillips was

". . . present in person and as general guardian of her minor children, Betty Louise Phillips, Shirley Ann Phillips, Richard Ward Phillips and Frances Marie Phillips, and by her attorneys, in her individual capacity and in her capacity of general guardian aforesaid, W. O. Miller and James A. Brown";

and, *inter alia*, the court found in each order that a petition had been filed by Verona Phillips, on behalf of herself and as guardian, seeking the removal of R. H. Phillips as administrator and alleging "failure to account for certain issues and profits from" his farming operations, and that a citation had been issued in each estate requiring R. H. Phillips to show cause why he "should not be removed as administrator and give an accounting of his acts as such administrator."

The following findings appear in the order in the partnership estate:

"XIV. That it is impractical and not to the best interests of said above named heirs of said S. Ward Phillips, deceased, to distribute said partnership estate to said surviving partner and the above entitled heirs, in common and undivided, or by the partitioning thereof, and that the most equitable distribution that can be made thereof is by distributing the whole of said partnership property to said surviving partner R. H. Phillips and to secure to said heirs of said S. Ward Phillips, deceased, their value of their just proportions of their said one-half interest, as determined by the Court.

"XV. That by reason of said Petition and Citation hereinabove referred to and the matters set forth in the last Paragraph above, negotiations were entered into between the said R. H. Phillips in his capacity as administrator and in his individual capacity, represented by his attorneys aforenamed, and said Verona Phillips, in her individual capacity and in her capacity as guardian of the said minor children, represented by her attorneys aforenamed, for a compromise and settlement of the controversy arising out of said Petition, and for a distribution of said one-half ($\frac{1}{2}$) interest of said heirs of said S. Ward Phillips, deceased in said partnership land, to said R. H. Phillips, the surviving partner, and for the payment by said R. H. Phillips, for said one-half ($\frac{1}{2}$) interest of said heirs of said S. Ward Phillips, deceased, in cash, and a compromise and agreement were arrived at and written agreements made in accordance therewith, copies of which agreement and supplemental agreement are attached to the final account and petition for distribution on file herein as Exhibits 'C' and 'D', and made a part thereof, and by reference made a part hereof, which agreement and supplemental agreement were entered into subject to the approval of the above entitled Court. . . .

"XXI. The Court further finds that said compromise agreement and supplemental agreement entered into between Verona Phillips individually and as general guardian of her four minor children aforenamed, as first party, and R. H. Phillips individually and as administrator of the copartnership estate composed of S. Ward Phillips above entitled and as administrator of the estate of S. Ward Phillips, deceased, is a just, fair and reasonable settlement and agreement of all the controversies that have arisen between said parties."

And in the individual estate there appears the following finding:

"XVI. That by reason of said petitions and citations hereinabove referred to and the impracticability of distributing said land held in common and undivided in said partnership estate, and the unpaid claims in this estate, negotiations were entered into between the administrator, represented by his attorneys, C. H. Brittenham, of Lind, Washington, and Davis, Heil & Davis, of Spokane, Washington and said Verona Phillips in her individual capacity and in her capacity as guardian of the said minor children, represented by her attorneys W. O. Miller, of Ritzville Washington and James A. Brown, of Spokane, Washington, for a compromise and

settlement of the controversy arising out of said petitions, and for a distribution of the one-half (½) interest of the heirs of said deceased in said partnership land, to R. H. Phillips, the surviving partner, whereby said R. H. Phillips agrees to pay for said one-half (½) interest in cash the reasonable market value thereof, all of which compromise and agreement is as fully shown in copies of the agreement and supplemental agreement entered into between R. H. Phillips in his individual capacity and as administrator and the said Verona Phillips, in her individual capacity and her capacity as guardian, marked, respectively, Exhibits 'C' and 'D' attached to said final report and petition for distribution and made a part thereof, and by reference made a part hereof, which agreement and supplemental agreement were entered into subject to the approval of the above entitled Court."

In the individual estate, the court further stated that it had entered an order in the partnership estate approving the agreement and supplemental agreement referred to, and added:

"XIX. That said settlement, as provided in said agreement and supplemental agreement is a just and fair settlement of the controversies between the administrator, as such and in his individual capacity and said Verona Phillips in her individual capacity and as general guardian of her minor children. . . ."

And in the decretal portion of each order, the court approved the agreement and supplemental agreement and dismissed the petition for removal of the administrator and for a further accounting.

In the partnership estate, all of the property was distributed to R. H. Phillips, and he was directed to pay twenty thousand dollars to the individual estate; and in the individual estate the 4155.92 acres and other real property referred to in the agreement and supplemental agreement were distributed one half to Verona Phillips and one eighth to each of her wards, the four minor children, and $12,494.96 of the twenty thousand dollars was distributed one half to Verona Phillips and one eighth to each of her wards, the four minor children. She signed a receipt for $6,247.48 as guardian of the children. ($7,505.04 of the twenty thousand

dollars went to Verona Phillips in repayment of advances made by her to the estates and in settlement of the claim of the Anna Mittermeyer estate.)

Verona Phillips approved the order in each estate "As General Guardian of her minor children, and in her Individual Capacity."

The orders approving the accounts and decreeing distribution in both estates were based upon the settlement agreements and the further finding by the court that partition was impractical and not to the best interests of the heirs of S. Ward Phillips; and the only basis upon which Verona Phillips, individually, can prevail in the present action is that, at the time of the settlement, the administrator intentionally concealed from her assets of the estate, such concealment of assets amounting to *fraud in the inducement of the settlement agreements*. The trial court found:

"L. That the . . . concealment of such additional grain sales . . . was knowingly and willfully made by R. H. Phillips, as Administrator, with design and intent that it be acted upon by the court and by Verona Phillips, . . . and that in the compromise and settlement agreement of December 9, 1937, . . . Verona Phillips . . . was misled and deceived by such concealment and misrepresentation by R. H. Phillips and induced to enter into a compromise and settlement agreement which she would not have entered into had such concealed facts been known and such misrepresentation not made. . . ."

The evidence of concealment of grain sales was entirely circumstantial. We will assume for the purpose of this opinion that grain sales of $8,208.07 were not reported; even so, there is absolutely no basis for the finding that Verona Phillips was misled or deceived thereby, or relied upon the administrator's report.

The trial court set aside the decrees of distribution, relying upon the following language in *In re Nielsen's Estate*, 198 Wash. 124, 131, 87 P. (2d) 298 (1939):

"A decree of distribution from which no appeal is taken is final and conclusive upon all parties of whom the court has jurisdiction. *Krohn v. Kirsch*, 81 Wash. 222, 142 Pac. 647; *Meeker v. Waddle*, 83 Wash. 628, 145 Pac. 967; *Coleman v.*

*Crawford,* 140 Wash. 117, 248 Pac. 386. It is not conclusive, however, as to property which has been fraudulently withheld from administration (*In re Dyer's Estate,* 161 Wash. 498, 297 Pac. 196); and, of course, *when it is entered upon stipulation or agreement, it may be attacked for fraud inducing the agreement.*" (Italics ours.)

While that case correctly states the rule where the settlement was entered into in reliance on the accuracy of the administrator's report and accounting of the assets of the estate, it can have no application in this case because the record clearly shows that, in entering into the settlement agreements, Verona Phillips not only did not rely upon the administrator's figures for the period from 1929 to 1934, but definitely believed that undisclosed sales existed and would be discovered on an accounting. She asserted in her petitions for an accounting and removal of the administrator that such sales existed in the amount of $39,034.30 in the individual estate and in the amount of $43,155.30 in the partnership estate. The testimony discloses that, prior to the settlement agreements, Verona Phillips' accountant had discovered slightly in excess of three thousand dollars of undisclosed sales to the Seattle Grain Company, and that he advised her that his investigation of shortages of wheat sales from the estates was not completed. Mrs. Phillips testified as follows:

"Q. Mrs. Phillips, at the time of the signing of these settlement agreement papers, were you satisfied with the manner in which the estate had been settled? A. No, I was not. Q. You were not? A. No. Q. For what reason? A. *I did not think that we had the picture of the proceeds or the properties in the estate.* Q. In other words, you thought there would be more wheat shortages, did you? A. I felt if everything had been gone into thoroughly, *those things might be developed.*" (Italics ours.)

■ Verona Phillips cannot now contend that she was induced by fraudulent concealment of grain sales to enter into a settlement agreement, when the dispute over the existence and extent of such concealed sales was *one of the matters which that agreement settled.* Prior to the execution of those agreements, she had, individually and as guardian of the

other respondents, filed petitions for the removal of the administrator and for an accounting in both estates. She had able counsel and presumably competent accountants, and she could have gone to trial on the issues raised by her petitions. She would then have had an opportunity to establish the allegation of her petitions that wheat of the value of more than eighty thousand dollars, produced between 1929 and 1934, was not accounted for and to obtain "the true picture of the proceeds [and] the properties in the estate." She chose to forego that "extensive litigation" and resolved the dispute by entering into the settlement agreements on the basis of which her petitions were dismissed, the individual and partnership estates were closed, and distribution was made to the minors of all the property inventoried in the guardianship proceeding. The terms of the settlement agreements clearly show that the parties were not merely agreeing on a distribution of the assets of the estates as shown in the reports and accounts of the administrator, but were also settling the many issues raised by Verona Phillips' petitions. The settlement agreement of December 9, 1937, recites:

"WHEREAS, certain objections have been filed to the reports of said administrator, and

"WHEREAS, to bring the matters on for hearing would require some very extensive litigation, and

"WHEREAS, the parties hereto have agreed to settle their differences. . . ."

The supplemental agreement of December 30, 1937, recites:

"WHEREAS, it is the desire of the parties hereto, that all of the differences arising out of the administration of the said estates be fully and finally adjusted and settled. . . ."

█ Verona Phillips cannot now claim that she was fraudulently induced to enter into the settlement agreements merely because she subsequently seemingly confirmed, to the extent of about ten per cent, the truth of her allegations about grain produced and not accounted for. A compromise or settlement of a controversy by agreement of the parties has the same force and effect as though a

judgment had been entered in an action on the claim, and irrevocably fixes the rights of the parties thereto in relation to the subject matter dealt with. An order settling the final account of an administrator and a decree of distribution entered on the basis of such a compromise or settlement are *res judicata* of all matters relating to the subject matter of the controversy. *McClure v. Calispell Duck Club* (1930), 157 Wash. 136, 288 Pac. 217; 15 C. J. S. 744, Compromise and Settlement, § 26.

Respondents contend that, under our decisions, failure of a fiduciary to make full disclosure is always extrinsic fraud. They rely most strongly upon *Rosenberg v. Rosenberg* (1926), 141 Wash. 86, 250 Pac. 947, in support of this contention. That case involved a suit brought by residuary legatees against the former executors of the estate to recover damages on account of fraud. It appeared from the evidence that, during the course of the probate proceedings, certain real property belonging to the estate was sold to a corporation owned by one of the executors, with a secret agreement between the corporation and another executor granting to the latter an option to purchase the property at a profit of twenty thousand dollars to the corporation above the price paid by the corporation to the estate. After the original sale to the corporation, the residuary heirs brought an action to set aside the sale and the matter was settled by agreement; however, the secret option agreement was not revealed. Later, on learning of the option and its exercise, the heirs brought the action against the executors for twenty thousand dollars in damages. The plaintiffs prevailed and the judgment was affirmed by this court. We there pointed out (p. 89):

"They [the plaintiffs in the former action to set aside the sale] entertained the belief that the purchase price was paid with money belonging to the estate, and the real purpose of the first action was to ascertain the truth or falsity of this belief";

and stated (p. 91):

"It is true, of course, that all matters which were litigated or could have been litigated in one suit are not sub-

ject to subsequent litigation between the same parties. But this rule is subject to the limitation that, where the parties have been induced by fraud or other unlawful means from bringing into the original action all the matters which might have been therein litigated, they are not then barred from introducing those matters in a subsequent lawsuit. *White v. Miley,* 137 Wash. 80, 241 Pac. 670. So, here, the settlement which was made of the action begun in March, 1919, did not become *res judicata* of this transaction between the Manhattan Investment Company and Mrs. Rosenberg."

Thus the basis for the decision in that case was that the secret agreement, not having been disclosed at the time of the settlement agreement, did not relate to any matter that had been raised by the first action or that was contemplated by the plaintiffs therein in entering into the settlement agreement. The breach of the duty of disclosure of this secret agreement was thus held to be fraud extrinsic to the settlement agreement.

In the cases of *Ellis v. Schwank* (1950), 37 Wn. (2d) 286, 223 P. (2d) 448, and *Francon v. Cox* (1951), 38 Wn. (2d) 530, 231 P. (2d) 265, cited by respondents, it was held that, where the fiduciary's concealment or failure to disclose prevents the person to whom the duty of disclosure is owed from presenting all the claims or defenses to which he is entitled, the failure to disclose is extrinsic fraud.

In the instant case, the fraud complained of (failure to disclose grain sales to the Seattle Grain Company) can in no sense be held to have prevented Verona Phillips from bringing the matter of undisclosed grain sales into the original controversy. She did in fact bring those matters into the litigation and into the negotiations for settlement, by alleging that such undisclosed sales existed in the amounts of $39,034.30 in the individual estate and $43,155.30 in the partnership estate. The duty of full disclosure which the law imposes upon a fiduciary is applicable to determine whether fraud has in fact been committed, but it cannot control the question of whether the fraud was extrinsic or intrinsic to matters included within a settlement agreement.

Verona Phillips is certainly bound by the settlement agreements, and, as to her and her individual interest in the estates in question, the trial court must be reversed.

We come now to the more difficult question of whether the other respondents, the then-minor children, were bound by Verona Phillips' settlement agreements, executed by her as their guardian. That question is difficult only by reason of our statute, RCW 11.92.060 [cf. Rem. Rev. Stat., § 1576], which reads as follows:

"Guardians of minors, insane or mentally incompetent persons, or their property, may represent their wards in all matters, and may sue and be sued as such guardian, and the wards shall be bound by any compromise or settlement made by the guardian, if the court has ordered or approved the action of the guardian. Before making any such compromise or settlement, the guardian shall file with the court which appointed him a petition setting out the nature of the suit, claim, or dispute, together with the reasons for settling or compromising it, and the court, either with or without notice of hearing, may make such order on such petition as appears proper."

The three-fold purpose of the statute is to protect the guardian, to protect the ward, and to permit binding contracts to be made with third parties.

There being no question of adverse interest between the guardian and her wards, and the settlement agreements having been specifically approved by the superior court (probate) in both estates, we would have little difficulty, apart from this statute, in concluding that the wards are bound by the settlement agreements entered into by their guardian. *Burke v. Northern Pac. R. Co.* (1915), 86 Wash. 37, 149 Pac. 335; *Metzner v. Newman* (1923), 224 Mich. 324, 194 N. W. 1008, 33 A. L. R. 98 (see note, 33 A. L. R. 105).

The respondents other than Verona Phillips rely upon the admitted facts that no formal petition asking for such approval was ever filed in the guardianship proceeding and that no formal order was obtained in that proceeding approving the settlement; and they place particular reliance upon certain language in our opinion in *Grady v. Dashiell*

(1945), 24 Wn. (2d) 272, 290, 163 P. (2d) 922, where we said:

"The guardian, Dashiell, had no power or authority to compromise or settle a claim against Dow, or his estate, until and unless he filed a petition setting up the requirements enjoined by Rem. Rev. Stat., § 1576 [cf. RCW 11.92.060], and until such a petition was filed and presented the probate court was without jurisdiction to enter an order authorizing such compromise or settlement."

We must consider both the facts involved and the question we were called upon to decide in that case. Ira Grady, a veteran of World War I, was adjudged insane in 1933 and was restored to sanity in 1943. During that ten-year period, three different individuals served as guardian of his estate. Lorenzo Dow, the second of these, served from January, 1938, until his death in June, 1940. During his tenure as guardian, he made disbursements to George Grady, an adult son of Ira Grady, and to certain lodge members who had advanced the amount of Ira Grady's dues to keep him in good standing. In each instance, a petition for the disbursement was filed and an order was entered authorizing it.

Upon Dow's death, Eugene Dashiell succeeded him as guardian and, November 27, 1940, filed a report reciting his appointment and the incompetency of Ira Grady, and stating to the court (p. 280):

" 'That upon appointment of your guardian herein he, in attempting to determine the assets belonging to said guardianship proceedings, ascertained that it was *approximately the sum of $157.54; that there should be allowed the former guardian, for his fees, the sum of $52.24 leaving a balance of $105.30 to be paid over to your guardian from the former guardian or his estate* which sum said former guardian or his estate are now ready to pay to this guardian upon receipt of an order exonerating said former guardianship and his bond.' (Italics ours.)"

On December 6, 1940, Dashiell filed a petition which recited that the sum of $105.30 had been accepted

" ' . . . in full settlement and satisfaction of any and all claims either by this guardianship against Lorenzo Dow,

or the Estate of Lorenzo Dow, or the surety upon his official guardianship bond, and the Royal Indemnity Co., a corporation, surety upon said bond, and obtained a full satisfaction and release of any and all claims by the Estate of Lorenzo Dow against the guardianship herein, for any and all claims for services and costs, expenses, or otherwise, and has fully settled all accounts and discrepancies between the former guardian and this estate.' "

On the same date, the court entered an order reciting the foregoing settlement and adjudging that the former guardian, Lorenzo Dow, his estate, and his surety be released from any and all liability in the guardianship matter.

After Ira Grady was restored to competency, Dashiell filed a final account and Ira Grady signed a receipt for the balance of the funds in Dashiell's hands, which document also released Dashiell and his surety from all liability. Thereafter, Ira Grady commenced an action against Dashiell and his surety for $52.24, the amount allowed Dow as fees, and against Dow's surety in the amount of $665.35 for payments totalling that amount made by Dow to George Grady and to the lodge members hereinabove referred to. Dashiell and his surety defaulted, and judgment was taken against them in the amount prayed for, $52.24, and no appeal was taken by them. No question as to their liability was before the court, and no question was raised as to any other disbursements made by Dashiell during his tenure as guardian. From a judgment against Dow's surety in the amount of $665.35 and interest, the surety company appealed, and its liability on Dow's bond was the sole issue before this court.

The appellant contended that there had been a compromise and settlement between Dashiell and Dow's estate within the purview of Rem. Rev. Stat., § 1576 [cf. RCW 11.92.060]. Referring to the report made by Dashiell as guardian on November 27, 1940, and heretofore quoted herein, this court said (p. 289):

"The only petition purporting to comply with the foregoing restrictive requirement is the 'report' made by Dashiell, as guardian, . . . in which he merely stated that in attempting to determine the assets belonging to the

guardianship estate, he ascertained that they amounted to the sum of approximately $157.54.

"There was nothing in that report which suggested to the court that there was, or might have been, any impropriety on the part of Dow in securing the orders above mentioned or in paying out the moneys for the purposes above set forth; there was nothing to indicate that a dispute existed between Dashiell and Dow, or his estate, as to the correct amount to be turned over to Dashiell; no reason was assigned for settling such dispute, if one existed. On the contrary, the report constituted a representation to the court that the correct amount to be turned over to Dashiell, after allowing Dow an attorney's fee, was $105.30. The court was never called upon, nor given the opportunity, to determine the regularity or propriety of Dow's former actions as guardian, or to call upon him or his estate for an accounting and surrender of all assets of the estate to Dashiell, that being a function which the court alone was empowered to perform under Rem. Rev. Stat., § 1579 [cf. RCW 11.88.120]. Dashiell's report in effect apprised the court that all former proceedings had been regular and that as a result only $105.30 then remained in the estate. If that had been the true state of affairs, the court's order releasing Dow and his surety might have been proper and valid, but, under the circumstances here shown, the alleged compromise and settlement did not comply with the requirement of Rem. Rev. Stat., § 1576 [cf. RCW 11.92.060], and therefore did not bind Ira Grady or his estate."

An examination of the foregoing quotation reveals that everything that we there indicated was not done, was done in the instant case, except that a formal petition asking approval of the settlement was not filed under that designation in the guardianship proceeding and there was no order in that proceeding specifically approving it. We pointed out in *Grady v. Dashiell, supra,* that the court had not been advised that there was anything to be compromised or settled. There had been no compliance with either the substance or the form of Rem. Rev. Stat., § 1576 (now RCW 11.92.060). We held that under such circumstances any settlement or compromise was void.

We find no statute that is the exact counterpart of our own, although practically every state has some requirement relative to court approval of compromises and settlements

by guardians. In many states, compromise and settlement without court approval is not void and will be upheld against attack if the guardian exercised sound judgment and the settlement is fair and reasonable; the court approval insures the guardian or the person dealing with the guardian that the transaction cannot thereafter be attacked except for fraud in the inducement of the settlement agreement. *Purcell v. Robertson* (1940), 122 W. Va. 287, 8 S. E. (2d) 881; *In re Guardianship of Sorrells* (1941), 58 Ariz. 25, 117 P. (2d) 96; *Hays v. Heinz* (1944), 317 Mass. 337, 58 N. E. (2d) 146.

However, we have, by our opinion in *Grady v. Dashiell, supra,* committed ourselves to the proposition that a compromise or settlement is rendered void if the guardian fails to comply with the statute and inform the court which appointed him of the controversy and the reasons for settlement, and fails to secure approval of the settlement by that court. With that holding we are in accord. It was not necessary to say, however, as we said in that case, that until the petition referred to in the statute is filed and presented the probate court is without jurisdiction to enter an order authorizing a compromise and settlement, and we do not adhere to that statement. We are convinced that there has been substantial compliance with the statute (a) when the court in the guardianship proceeding is aware of the nature of the suit, claim, or dispute, (b) together with the reason for settling or compromising it, and (c) has ordered or approved the compromise or settlement.

Here Judge Driscoll, who presided over the probate proceedings in both the individual and partnership estates, would as probate judge have heard the matter had it been presented in the guardianship proceeding by formal petition. He was fully advised of the nature and character of the controversy between the parties by the petitions filed by the guardian in both estates, and of the reasons for settlement. His order approving the settlement in the individual and partnership estates would ordinarily be binding upon all parties before the court. The minor heirs were before the court at that time, represented by their guardian, whose

interests were in no sense adverse to theirs. The settlement agreement was subject to approval by the superior court for Adams county and was specifically approved by that court in the "Order Approving Final Account and Decreeing Distribution" in both the individual and partnership estates, which orders were entered February 9, 1938. Those orders were approved, as we have heretofore pointed out, by Verona Phillips "As General Guardian of her minor children, and in her Individual Capacity." (We attach no importance to the fact that the minor children were also represented by a guardian *ad litem*, who also approved both orders.)

Moreover, the record in the guardianship proceeding establishes that Judge Driscoll, in his capacity as the judge who presided over that matter, was aware of the controversy between Verona Phillips, individually and as guardian of her minor children, and R. H. Phillips, individually and as administrator of the individual and partnership estates, and of the settlement between them. On February 23, 1938, Verona Phillips filed a petition in the guardianship proceeding in which she alleged that she had filed petitions in the individual and partnership estates asking for the removal of the administrator and for a "full, true and complete accounting," and

"That in order to prepare for a trial of the issues formed on said pleadings petitioner was required to employ attorneys, accountants, assistants and field men to learn the amount of wheat produced on said lands prior to the time said first account was made and thereafter in order to be assured whether said account was correct and whether any future accounts of production were true";

that she had paid out for that purpose $3,010 to one attorney and $1,500 to another, $825 to one accountant and $1,050 to another, and $770 for field service and transportation, or a total of $7,155; that half of that amount was a proper charge against the guardianship estate; and that in consequence of the settlement of this litigation the wards had received $6,247.48 in cash and a one-half interest in certain lands (one-eighth interest to each of the four wards).

Judge Driscoll thereupon signed an order reciting:

"This matter coming on to be heard on the Petition of the Guardian for allowance of costs and it appearing to the Court that in the settlement heretofore made by the guardian with the administrator of the partnership estate of S. Ward Phillips deceased, and with the administrator of the estate of said S. Ward Phillips, said minors are entitled to the sum of $6247.48 and an undivided ½ interest in 4155 acres of real property free and clear of indebtedness and also of 160 acres of real property on which taxes remain due and unpaid in the sum of $160.08 and another tract containing 294.76 acres on which there remains an indebtedness of $850.00 or thereabouts; that said *settlement was reached after long and expensive litigation in which petitioner was required to expend for and on behalf of herself and said minors the sum of $7155.00 in employing field men, attorneys, accountants and in paying court costs, ½ of which should be repaid to her from said minors' interest*" (Italics ours);

and directed the guardian to withdraw one half of that total amount (and other amounts not here material) from any funds in her possession as guardian. This was just two weeks after Judge Driscoll had approved the settlement referred to in the individual and partnership estates.

Judge Driscoll's knowledge of the issues raised on the "long and expensive litigation" and of the terms of the settlement and what had been secured by the guardianship estate in consequence thereof, and his approval of that settlement, expressed specifically and definitely as probate judge in the individual and partnership estates, appears from the record in those estates. His approval of that settlement in the guardianship proceeding necessarily inheres in his order authorizing the disbursement of guardianship funds for the purpose of paying the expenses involved in the litigation which was terminated by the settlement agreements. Any probate judge in a guardianship proceeding who is asked to approve attorneys' fees, accountants' fees, and expenses of litigation aggregating almost thirty-six hundred dollars in an estate whose records are part of the records of his court has the duty to familiarize himself, if he does not already know, with the issues involved in that

litigation, and with what has been done to earn such fees. The proceedings in the individual and partnership estates were, by the reference thereto in the petition filed in the guardianship proceeding, made matters which the judge passing upon that petition must necessarily consider as proceedings "engrafted, ancillary, or supplementary" to the guardianship proceeding. See *Swak v. Department of Labor & Industries* (1952), 40 Wn. (2d) 51, 240 P. (2d) 560.

The decision of the Michigan supreme court in *In re Marxhausen's Estate* (1929), 247 Mich. 192, 225 N. W. 632, is apropos. The Michigan statute requires that, to make a settlement agreement binding upon minors, the probate judge must find that the effect upon the estate of the minors is just and reasonable. The opinion stated (p. 199):

"The statute requires, as a condition of approval, that the court find: (a) The contest or controversy is in good faith, and (b) the effect on the estate of the minor is just and reasonable. This means that the court shall not approve a compromise as of course upon consent of the guardian, but shall investigate in order to make a judicial determination of the essentials of settlement. [Citations.] The statute, however, does not require that testimony be taken in a proceeding for settlement. If the court is otherwise uninformed, it may be necessary. But a probate court takes judicial notice of its own files. [Citation.] And in the course of administration of an estate, in the consideration of the large number of petitions incident thereto and making orders thereon, in the examination of claims and accounts, in the general conduct of the estate and advising and directing the administrator or executor, a judge of probate may, and usually does, obtain an intimate knowledge of the estate and is able to determine a policy without the necessity of direct testimony. *The finding necessary for approval of settlement is one of substance, not of form, and is to be based upon acquaintance with the situation rather than upon whether witnesses are sworn.*" (Italics ours.)

Later the court said, in pointing out that the proceedings were fair to the minor (p. 200):

"Failure to approve settlement would have resulted in long delay in closing the estate and extensive and costly litigation. From the whole situation, it is apparent that the

probate judge exercised sound discretion in approving the settlement."

The policy behind the Michigan statute is the same as ours, *i.e.*, to require that the court have sufficient information so that approval or disapproval of a settlement agreement would represent an informed opinion. It is there recognized that a court may be adequately informed of the situation surrounding the settlement agreement by information obtained from the court records.

It should be noted that the Washington statute, like the Michigan statute, does not require a formal hearing on the petition for approval of the settlement. It was said in *Thompson v. Maxwell Land Grant & R. Co.* (1897), 168 U. S. 451, 42 L. Ed. 539, 18 S. Ct. 121, and was quoted with approval in our case of *Burke v. Northern Pac. R. Co.* (1915), 86 Wash. 37, 39, 149 Pac. 335, that:

" 'It would be strange, indeed, if, when those authorized to represent minors, acting in good faith, make a settlement of claims in their behalf, and such settlement is submitted to the proper tribunal, and after examination by that tribunal is found to be advantageous to the minors and approved by a decree entered of record, such settlement and decree can thereafter be set aside and held for naught on the ground that subsequent disclosures and changed conditions make it obvious that the settlement was not in fact for the interests of the minors, and that it would have been better for them to have retained rather than compromised their claims. . . .' "

The following from the *Thompson* case is also quoted in the *Burke* case (p. 42):

" 'Ordinarily, indeed, a court before entering a consent decree will inquire whether the terms of it are for the interests of the infants. It ought in all such cases to make the inquiry, and because it is its duty so to do it will be presumed in the absence of any showing to the contrary, that it has performed its duty. . . . The consent decree shows fully the terms of the settlement, and it certainly is not straining the presumption in favor of judicial action to assume that the court would not have permitted the entry of this decree providing for a settlement whose terms were thus disclosed, without being satisfied that such settlement

was for the interest of the minors who were under its charge.' "

██ We have found no case remotely comparable to the one now before us. The facts which make this case *sui generis* are based upon the uncontroverted fact that Judge Driscoll had detailed and comprehensive knowledge of the issues involved in the "extensive" and "expensive" litigation intended to be terminated by the settlement agreements. A petition in the guardianship proceeding would have added nothing to his understanding of those issues and the reasons for and the purpose of the settlement as revealed in the individual estate, the partnership estate, and the guardianship files. In approving the settlement agreements in both the individual and partnership estates, he was fully aware, as any conscientious judge similarly situated would have been, of his obligation and duty to protect and safeguard the interests of the minor heirs then before the court, who were also the wards in the guardianship estate, likewise under his care. He knew, too, that the assets in the guardianship estate would be, in great part at least, dependent upon what the minors received in consequence of the settlement agreements.

Every purpose of RCW 11.92.060 was satisfied in this case, and the then-minor heirs of S. Ward Phillips, deceased, who were the wards in the guardianship proceeding, should be and are bound by the settlement made by their guardian, approved by Judge Discoll in the individual and partnership estates of S. Ward Phillips, deceased, and inferentially approved by him again in the guardianship proceeding. Any other conclusion would sacrifice the substance and purpose of the statute to an empty form—a form which, incidentally, represented a duty of the guardian. The responsibility for any formal presentation of the proposed settlement to the probate court in the guardianship proceeding was on the guardian (and her attorney). The wards in the guardianship proceeding, all of whom are now of age and who have had the advantage of this settlement, now seek to take advantage of the dereliction and neglect of their former guardian in failing to obtain formal consent or approval of

her action as guardian in entering into the settlement agreements but seek to impose no liability on her on that account. Each of them, on reaching majority, formally released the guardian from making any accounting; and the guardianship was closed and the guardian discharged some six months before these proceedings were instituted.

For the reasons indicated, none of the respondents are entitled to maintain any of the actions or proceedings now before the court. The judgment of the trial court is reversed, with instructions to enter an order of dismissal in all the consolidated actions and proceedings.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.

February 14, 1955. Petition for rehearing denied.

