[No. 52170-1.   En Banc.   October 2, 1986.]

JOYCE SCHOEMAN, *Appellant,* v. NEW YORK LIFE INSURANCE COMPANY, *Respondent.*

*Howard K. Todd* (of *Dodd, Coney & Bishop, P.S.*), for appellant.

*Douglas E. Wheeler* and *Deborah D. Wright* (of *Lane, Powell, Moss & Miller*), for respondent.

CALLOW, J.—The Superior Court dismissed the wrongful death claim brought by Mrs. Joyce Schoeman, the appellant, as personal representative of her deceased husband Giovanni Schoeman. She alleges that the respondent New York Life Insurance Company (Insurer) negligently issued a keyman life insurance policy on the life of her husband and such issuance was the proximate and foreseeable cause of his death. The trial court dismissed her action as a matter of law holding that her claims were barred by res judicata and that she had failed to state a claim upon which relief could be granted against the Insurer. We affirm.

Giovanni Schoeman came to the United States from Europe to produce original art works. He had talent. His works included a sculpture used in the promotion of a movie. On July 27, 1977, Schoeman and Carl Edward Zehner entered into an agreement pertaining to the manufacture, sale and reproduction of Schoeman's works. Zehner formed a corporation, E.Z., Inc., of which he was the president and sole shareholder, to manufacture and sell repro-

ductions of Schoeman's art works. In December 1977, the Insurer issued a keyman life insurance policy on the life of Giovanni Schoeman, which named E.Z., Inc., as beneficiary.

The policy lapsed within 1 year of issuance. In April 1978, Schoeman moved to Santa Barbara, California. Mrs. Schoeman claims that after the move Schoeman no longer continued to produce artwork for E.Z., Inc. Nevertheless, on January 18, 1979, Zehner and Schoeman applied to reinstate the keyman life insurance policy which the Insurer subsequently reinstated. Mrs. Schoeman asserts that the Insurer acted negligently in reinstating the policy because it knew or should have known that E.Z., Inc., had no insurable interest at that time in the life of Giovanni Schoeman. She claims that she has a separate wrongful death action against the Insurer based upon the Insurer wrongfully renewing a life insurance policy where the beneficiary had no insurable interest in the life of the insured. She claims that this cause of action, based upon the claimed negligence of the Insurer, has not been settled as part of the settlement of the interpleader action.

In January 1981, Dennis Boyd Miller shot and killed Schoeman. Miller was convicted of murder by a California court. During the trial a witness testified that Miller had boasted that someone who stood to benefit from a $100,000 insurance policy on Schoeman's life had hired him to commit the murder.

In March 1982, the Insurer commenced an interpleader action in the United States District Court for the Western District of Washington. Named as defendants and possible claimants to the insurance proceeds were: Mrs. Schoeman; John Berryhill, the estate administrator; Zehner; E.Z., Inc.; and a Zehner creditor. Mrs. Schoeman and Berryhill raised third party claims against Zehner and E.Z., Inc., alleging that Zehner had hired Schoeman's murderer in order to obtain the proceeds of the keyman life insurance policy under which the corporation stood to benefit. At this time Mrs. Schoeman did not assert any claims against the Insurer.

In March 1983, the Insurer moved for discharge from the interpleader action, seeking discharge from its obligations as a party litigant. The Insurer admitted liability on the policy in the amount of $100,000 plus interest. Mrs. Schoeman and Berryhill responded to the motion for discharge and raised no objection to the entry of an order discharging the Insurer from further liability other than the amount of the interpleaded funds. On March 19, 1983, the federal court ordered the discharge of the Insurer. On July 27, 1983, the policy claimants reached a settlement which provided for payment of $82,536.14 to the Schoeman estate. The other claimants divided the remaining policy funds.

Mrs. Schoeman filed this action in January 1984. The wrongful death claim raised against the Insurer charges the Insurer with responsibility for the death of Giovanni Schoeman, just as Mrs. Schoeman had charged Zehner and others with responsibility for his death in her cross claim in the interpleader action. The Insurer moved for a summary judgment of dismissal. The trial court granted the motion, dismissing Mrs. Schoeman's complaint as a matter of law. She appeals the dismissal of her claims.

The parties raise the following issues:

1. To what extent does a federal interpleader action require that a party raise a claim in an interpleader to have it barred in state court as res judicata?

2. Is Mrs. Schoeman's claim a compulsory counterclaim required to have been brought during the interpleader?

3. Did Mrs. Schoeman fail to state a claim in state court upon which relief against the Insurer may be granted?

## Res Judicata

The doctrine of res judicata requires a concurrence of identity in four respects: (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made. *Norco Constr., Inc. v. King Cy.*, 106 Wn.2d 290, 721 P.2d 511 (1986); *Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 396,

429 P.2d 207 (1967); *Meder v. CCME Corp.*, 7 Wn. App. 801, 805, 502 P.2d 1252 (1972). In *Meder* we find at 804–05:

Courts in their concern to eliminate duplicitous litigation and yet allow a party to litigate on a matter which would not have been properly included in the previous action often refer to this doctrine of repose as res judicata, meaning a thing decided, or as a prohibition against splitting causes of action. Thus, in *Sanwick v. Puget Sound Title Ins. Co.*, 70 Wn.2d 438, 441, 423 P.2d 624, 38 A.L.R.3d 315 (1967), we find:

This court from early years has dismissed a subsequent action on the basis that the relief sought could have and should have been determined in a prior action. The theory on which dismissal is granted is variously referred to as res judicata or splitting causes of action. *Currier v. Perry*, 181 Wash. 565, 44 P.2d 184 (1935); *Sayward v. Thayer*, 9 Wash. 22, 36 Pac. 966, 38 Pac. 137 (1894).

. . .

. . . As early as *Sayward v. Thayer*, 9 Wash. 22, 36 Pac. 966, 38 Pac. 137, it was stated:

"The general doctrine is that the plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

. . .

"The matter in controversy here was included within the matter in controversy there. It either was, or else could have been, adjudicated in the former action. That judgment, therefore, became *res judicata* of the issues and matters here presented."

*See also Bradley v. State*, 73 Wn.2d 914, 442 P.2d 1009 (1968). If a matter has been litigated or there has been an opportunity to litigate on the matter in a former action, the party–plaintiff should not be permitted to relitigate that issue. *Walsh v. Wolff*, 32 Wn.2d 285, 201 P.2d 215 (1949); *Kiecker v. Pacific Indem. Co.*, 5 Wn. App. 871, 491 P.2d 244 (1971); 46 Am. Jur. 2d *Judgments* § 395 (1969).

Res judicata does not bar claims which arise out of a transaction separate and apart from the issue previously litigated. *Seattle–First Nat'l Bank v. Kawachi,* 91 Wn.2d 223, 226, 588 P.2d 725 (1978). Further, res judicata is not intended to deny the litigant his or her day in court. *Luisi Truck Lines, Inc. v. Utilities & Transp. Comm'n,* 72 Wn.2d 887, 894, 435 P.2d 654 (1967).

Res judicata requires a final judgment on the merits. *Leija v. Materne Bros., Inc.,* 34 Wn. App. 825, 827, 664 P.2d 527 (1983) (citing *Bordeaux v. Ingersoll Rand Co., supra*); Restatement (Second) of Judgments § 13 (1982). The March 29, 1983 order dismissing the Insurer from the interpleader states in part:

> ORDERED that plaintiff be and hereby is discharged from any and all liability in this cause *and from any and all liability to all parties to this cause of action for any claims they may have against the plaintiff arising from the issuance of the insurance policy giving rise to this interpleader action,* as a result of the tender which it has made into the registry of this court.

(Italics ours.) The interpleader court dismissed the Insurer pursuant to Fed. R. Civ. P. 54(b) which reads:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross–claim, or third–party claim, or when multiple parties are involved, *the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Italics ours.) *Federal Civil Judicial Procedures & Rules,* Title 28, 131–32 (1985).

Mrs. Schoeman argues that the order dismissing the Insurer does not make an express determination as to whether there was no just reason for delay or an express direction for entry of judgment as required. Thus, she argues that the order is not a final order or final judgment on the merits and res judicata is not appropriate. *See McLean v. Smith,* 4 Wn. App. 394, 400, 482 P.2d 798 (1971).

The Insurer contends the express determination and direction required by Fed. R. Civ. P. 54(b) is not applicable once the case is terminated as to all parties, citing *Johnston v. Cartwright,* 344 F.2d 773 (8th Cir. 1965). In *Johnston* the trial court dismissed one of three defendants in a libel action. The plaintiff appealed the dismissal of the first defendant and on the motion of the plaintiff, the trial court ordered dismissal without prejudice as to the two remaining defendants. Thereafter, the appellate court denied the first defendant's motion to dismiss for want of "any order from which an appeal lies", pursuant to Fed. R. Civ. P. 54(a). The appellate court reasoned that following the trial court's dismissal of the remaining two defendants

> The matter was thereafter one in which multiple parties were no longer involved, and to which Rule 54(b) therefore was without further application. The dismissal order as to [the first defendant] was in its form such as would, except for the applicability of Rule 54(b) thereto, have been able to constitute and operate as a final judgment at the time it was made. When the situation was left without further application of Rule 54(b) thereto, from the dismissal without prejudice permitted as to the two other defendants, the order of dismissal as to [the first defendant] became entitled to the effect and operation of which its form was capable, and which it would previously have had except for the provisions of Rule 54(b).

*Johnston,* at 774.

A judgment entered upon settlement of an interpleader action is res judicata as to all questions which were or could have been litigated. *Stuyvesant Ins. Co. v. Dean*

*Constr. Co.,* 254 F. Supp. 102, 110 (S.D.N.Y. 1966), *aff'd,* 382 F.2d 991 (2d Cir. 1967). As with any interlocutory order the order dismissing the Insurer became final upon the subsequent settlement and dismissal of the remainder of the case. Therefore, no express determination regarding just reason for delay or express direction for entry of judgment was required. *See also In re Estate of Phillips,* 46 Wn.2d 1, 278 P.2d 627 (1955); *Rosenberg v. Rosenberg,* 141 Wash. 86, 250 P. 947 (1926).

The language of the order dismissing the Insurer from the interpleader discharged the Insurer "from *any and all liability* to all parties to this cause of action for any claims they may have against [Insurer] *arising from issuance of the policy".* Mrs. Schoeman expressly disclaimed any claims against the Insurer. This dismissal of the Insurer from the interpleader order was an adjudication and discharge on the merits.

The need for finality when actions are settled is safeguarded by res judicata. The deceased's estate collected $82,536.14 under the settlement reached by the policy claimants. The widow now seeks to collect additional money from the Insurer, by bringing this action which alleges that defendants Zehner and E.Z., Inc., had no insurable interest in the deceased and that the Insurer should not have reinstated the policy. If Mrs. Schoeman's present claim is valid, then the policy was void and unenforceable and Mrs. Schoeman should not have collected funds under the policy. *Lakin v. Postal Life & Cas. Ins. Co.,* 316 S.W.2d 542, 549, 70 A.L.R.2d 564 (Mo. 1958).

Mrs. Schoeman also asserts that she did not discover the claim against the Insurer until after the interpleader court discharged the Insurer. She argues that her claim was prematurely dismissed because discovery was incomplete. At the time Mrs. Schoeman counterclaimed in the interpleader action against Zehner and E.Z., Inc., for the wrongful death of her husband, prior to Insurer's discharge from the interpleader, she made no claim against the Insurer. In her answer to the complaint and cross claim in the federal

interpleader action, Mrs. Schoeman stated as a part of her first cross claim and third party complaint that:

The defendants Zehner and the purported corporation formed by them known as EZ Arts, Inc. had no insurable interest in the life of the named insured, and are therefore not entitled to the proceeds of the policy, which belong to the insured's heirs and administrator of his estate.

She then went on to state as a second cross claim and third party complaint in the federal interpleader action that Zehner and Dennis Boyd Miller had conspired to murder Schoeman and share in the proceeds of the life insurance, that by reason of the murder of Schoeman she had suffered damages, and she asked for $1 million from those defendants for the wrongful death of Schoeman. She knew or should have known about the negligence claim against the Insurer prior to discharge. She was not denied her day in court.

The question of the propriety of the issuance and liability under the insurance policy was before the court, the cause of action could have been urged, Mrs. Schoeman and the Insurer were parties and the interpleader had as its object the settlement of all claims against the Insurer. The Insurer sought repose from claims arising out of the issuance of the policy. Mrs. Schoeman granted that repose when payment was accepted upon the entry of the order sustaining the interpleader and discharging the Insurer and no appeal was taken therefrom.

### Compulsory Counterclaim

■ The failure to assert a compulsory counterclaim bars a later action on that claim. *Krikava v. Webber,* 43 Wn. App. 217, 219, 716 P.2d 916 (1986); *Baker v. Southern Pac. Transp.,* 542 F.2d 1123, 1126 (9th Cir. 1976); Restatement (Second) of Judgments § 22(2) (1982). Fed. R. Civ. P. 13(a) provides:

Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it

arises out of the *transaction or occurrence* that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

(Italics ours.) A liberal and broad construction of Rule 13(a) is appropriate to avoid a multiplicity of suits. *Warshawsky & Co. v. Arcata Nat'l Corp.,* 552 F.2d 1257, 1261 (7th Cir. 1977); *Annis v. Dewey Cy. Bank,* 335 F. Supp. 133, 137 (D.S.D. 1971).

Generally, the failure to plead a Rule 13(a) counterclaim in a federal action will prevent the pleader from subsequently bringing a separate action on that claim in state court. In 6 C. Wright & A. Miller, *Federal Practice* § 1417, at 102 (1971), we find:

[S]tate courts generally have adopted the approach of treating the barring effect of the rule [13(a)] as substantive and have declined to hear any claim not pleaded in a prior federal action as required by Rule 13(a).

(Footnote omitted.) *See, e.g., McDonald's Corp. v. Levine,* 108 Ill. App. 3d 732, 439 N.E.2d 475 (1982); *London v. Philadelphia,* 412 Pa. 496, 194 A.2d 901 (1963); *Horne v. Woolever,* 170 Ohio St. 178, 163 N.E.2d 378 (1959), *cert. denied,* 362 U.S. 951 (1960); *see also United Broadcasting Co. v. Armes,* 506 F.2d 766 (5th Cir.), *cert. denied,* 421 U.S. 965 (1975).

Four tests have been suggested regarding what constitutes "transaction or occurrence." One test asks whether the issues of fact and law are largely the same between the claim and counterclaim. *See Nachtman v. Crucible Steel Co. of Am.,* 165 F.2d 997, 999 (3d Cir. 1948). 6 C. Wright & A. Miller, *Federal Practice* § 1410, at 44, find this test "of doubtful utility." A strict application would be inconsistent with many authoritative counterclaim decisions. *Moore v. New York Cotton Exch.,* 270 U.S. 593, 610, 70 L. Ed. 750, 46 S. Ct. 367, 45 A.L.R. 1370 (1926) states that "the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim." Because complete overlap between the claim and

counterclaim is not required, this test is inappropriate.

A second test asks whether a subsequent suit on the issues in the counterclaim would be barred by res judicata, absent Rule 13(a). *See Libbey–Owens–Ford Glass Co. v. Sylvania Indus.,* 154 F.2d 814, 818 (2d Cir.) (Frank, J., dissenting), *cert. denied,* 328 U.S. 859 (1946); *Big Cola Corp. v. World Bottling Co.,* 134 F.2d 718 (6th Cir. 1943). This test is inadequate as an overall standard and the doctrine applied by most courts is the converse. *See* C. Wright & A. Miller, at 45.

A third test asks whether substantially the same evidence is needed to prove the claim and counterclaim. *See Williams v. Robinson,* 1 F.R.D. 211, 213 (D.D.C. 1940); *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir. 1961). A weakness with this test is that some claims may be compulsory even though they do not meet its standards, therefore, this test must be used with caution. *See* C. Wright & A. Miller, at 45. Often the evidence needed to prove the opposing claims may be substantially different even though they arise from the same events. As one court has stated, "[t]his test is, however, somewhat restrictive and not in line with the trend established by Moore v. New York Cotton Exchange . . ." *Annis,* 335 F. Supp. at 137.

█ Finally, a fourth test asks whether the claim and counterclaim are logically related. This test has been called "the one compelling test of compulsoriness." *Rosenthal v. Fowler,* 12 F.R.D. 388, 391 (S.D.N.Y. 1952); *see also Pipeliners Local 798 v. Ellerd,* 503 F.2d 1193, 1199 (10th Cir. 1974). The *Rosenthal* court stated:

> [C]ourts should give the phrase 'transaction or occurrence that is the subject matter' of the suit a broad realistic interpretation in the interest of avoiding a multiplicity of suits. Subject to the exceptions, [not instantly relevant] any claim that is logically related to another claim that is being sued on is properly the basis for a compulsory counterclaim; only claims that are unrelated or are related, but within the exceptions, need not be pleaded.

*Rosenthal,* at 391 (quoting 3 J. Moore, *Federal Practice* ¶ 13.13 (2d ed. 1985). In *Moore,* 270 U.S. 593, the Supreme Court stated at page 610:

"Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.

Under the present rule, Fed. R. Civ. P. 13(a), a significant number of decisions accept the logical relation test as controlling. *See, e.g., Crouse–Hinds Co. v. Internorth, Inc.,* 634 F.2d 690, 699–700, (2d Cir. 1980); *Cochrane v. Iowa Beef Processors, Inc.,* 596 F.2d 254, 263 (8th Cir.), *cert. denied,* 442 U.S. 921 (1979); *Albright v. Gates,* 362 F.2d 928, 929 (9th Cir. 1966); *Lesnik v. Public Indus.,* 144 F.2d 968 (2d Cir. 1944).

The considerations behind compulsory counterclaims include judicial economy, fairness and convenience. Of the four tests, the logical relationship test is the most widely recognized and it best fosters these important considerations. We find the logical relationship test applicable.

Mrs. Schoeman admits there is a logical relationship between the negligent issuance of a life insurance policy in favor of a beneficiary who has no insurable interest in the life of the insured, and who should be the beneficiary after the murder of that insured. She argues, however, that the logical relationship test should not be applied because this should not be dispositive of whether she should be barred from bringing her action against the Insurer in state court.

Rule 13 does not create the absolute bar of res judicata but is "a bar created by rule * * * which logically is in the nature of an estoppel arising from the culpable conduct of a litigant to assert a proper counterclaim."

(Footnote omitted.) C. Wright, *Federal Courts* § 79, at 390 (3d ed. 1976). She argues that there was no culpable conduct on her part, thus her failure to assert a proper counterclaim should not deny her the right to bring this claim.

We disagree. The application of the logical relationship test leads to the conclusion the counterclaim was compul-

sory and should have been brought in the interpleader action. Whether she was culpable is not the important factor, it is whether the rules fostering judicial economy required her to have brought the action. The issue as to which parties were entitled to the insurance policy funds and whether there was an insurance policy in effect at all are integrally and logically related. The prerequisites of Fed. R. Civ. P. 13(a) are met in this situation. Further, all the necessary facts for a wrongful death claim against the Insurer were known to Mrs. Schoeman at the time of the interpleader action yet she did not raise this claim. The fact that the original action took place in federal court and her cause is now in state court does not make compulsory counterclaim concerns inapplicable. She is barred from bringing the wrongful death claim against the Insurer because the asserted claim was compulsory.

It is unnecessary to address the third issue of whether Mrs. Schoeman has failed to state a cause of action because of our disposition of the first two issues.

## Conclusion

The doctrine of res judicata bars Mrs. Schoeman's wrongful death claim against the Insurer, which could and should have been brought in the interpleader action. A logical relationship existed between the claims in the interpleader action and the wrongful death claim. Mrs. Schoeman's wrongful death claim was a compulsory counterclaim. We affirm.

Dolliver, C.J., Utter, Brachtenbach, Dore, Pearson, Andersen, and Durham, JJ., and Skimas, J. Pro Tem., concur.